A99A1979. IN THE INTEREST OF A. W., a child.
(528 SE2d 819)

RUFFIN, Judge.

Anthony Hunter raped his 11-year-old stepdaughter, J. A. W., who became pregnant and gave birth to A. W. in January 1997. Hunter subsequently pled guilty to statutory rape, child molestation, incest, and cruelty to children charges and was sentenced to 20 years in prison followed by 20 years probation. Hunter has never contacted or contributed in any way to the support of the child. The Department of Human Resources filed a petition to terminate Hunter's parental rights on August 27, 1998. After being served with the petition and summons, together with the notice required by OCGA § 15-11-83, Hunter took no action to legitimate the child. Hunter appeared at the termination hearing and announced that he would not take the oath or cooperate in any way with the State. He said that he only appeared to speak on behalf of the mother, whose rights had previously been terminated:

> I was made aware for the first time that the biological mother's rights have been terminated. Had I been aware of this before my transportation, my presence here would not

be required or necessary. I only came here to speak as an advocate for her. In any other form, way, or shape I am not going to cooperate with the State whatsoever.

Under questioning, Hunter made it clear that he wanted nothing to do with the child. He stated that he did not acknowledge that he was the father of A. W., did not make any claim to her as his daughter, and had no desire whatsoever to be involved in her life. He said that he had read and understood the termination petition and discussed it with his attorney and that he did not contest the termination. He repeatedly indicated that he understood the court would terminate his parental rights and made a point of observing that termination would free him from "any legal obligation" to the child.[1] The juvenile court duly entered an order terminating Hunter's parental rights pursuant to OCGA § 15-11-81.

In what must surely rank as one of the most frivolous appeals in the history of this Court, Hunter now claims that the juvenile court erred in terminating his parental rights because there was no evidence of parental misconduct or inability. Pursuant to OCGA § 15-11-83 (i), however, a biological father who receives proper notice under the statute and fails to seek to legitimate his child "loses all rights to the child and the court shall enter an order terminating all such father's rights to the child and such father may not thereafter object to the termination of his rights to the child." Although the juvenile court did not indicate that it was relying upon OCGA § 15-11-83 (i) in terminating Hunter's rights, the statute is clear that a biological father who fails to seek to legitimate his child following receipt of proper notice "may not thereafter object" to the termination of his parental rights.[2] The reason for such a prohibition is obvious — someone who refuses to take steps to acknowledge his paternity should not be able to contest the termination of his parental rights. There is no reason why such a rule should not apply where the juvenile court bases the termination on a finding of parental misconduct or inability pursuant to OCGA § 15-11-81. It is undisputed that Hunter received proper notice and did not ever seek to legitimate A. W. To the contrary, he expressly refused to acknowledge his paternity at the termination hearing and stated that he made no claim to A. W. as his daughter. Accordingly, he may not now object to the termination of his parental rights.[3]

Moreover, apart from reliance on OCGA § 15-11-83 (i), Hunter's

---

[1] In response to a question from his attorney, Hunter later stated that he was not actually consenting to termination, although he understood that his rights would be terminated.

[2] See *In the Interest of E. D. T.*, 233 Ga. App. 774, 775 (505 SE2d 516) (1998).

[3] See *In the Interest of D. B. G.*, 226 Ga. App. 29, 30 (2) (485 SE2d 575) (1997).

affirmative statements at the hearing that he did not contest the termination preclude him from challenging the termination on appeal. It is well settled that "[a] litigant cannot acquiesce in a ruling and then complain of [that] ruling on appeal."[4] "Acquiescence completely deprives him of the right to complain further; he has agreed that the trial court's ruling was correct by submitting to it."[5] Hunter testified that he had read and understood the termination petition, which alleged parental misconduct and inability, that he had discussed it with his attorney, and that he did not contest the petition. Accordingly, he cannot now complain that the trial court granted the relief sought in the petition.

Finally, even if Hunter had not waived the right to contest the termination, the evidence was more than sufficient to support a finding of parental misconduct or inability. Hunter does not deny that A. W. is deprived but contends that there was no evidence that such deprivation is caused by a lack of proper parental care or control on his part. He also contends that there was no evidence of his present unfitness apart from the simple fact of his incarceration. These contentions are patently without merit.

In determining whether a child is without proper parental care or control, the court is authorized to consider

> (iii) Conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship; [and] (iv) Egregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature.[6]

"Although imprisonment alone does not always compel a termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist."[7] A parent's sexual abuse of his children is such an aggravating circumstance which will justify termination of parental rights.[8] In this case, Hunter was convicted of sexually molesting his 11-year-old stepdaughter, A. W.'s mother. The court was clearly authorized to conclude that Hunter's conviction and imprisonment for such crime would have a demon-

---

[4] *Kellogg v. State*, 233 Ga. App. 817, 818 (505 SE2d 794) (1998).

[5] (Punctuation omitted.) *Robinson v. Moonraker Assoc., Ltd.*, 205 Ga. App. 597, 598 (423 SE2d 44) (1992).

[6] OCGA § 15-11-81 (b) (4) (B) (iii)-(iv).

[7] (Punctuation omitted.) *In the Interest of E. N. H.*, 216 Ga. App. 209, 210 (453 SE2d 778) (1995).

[8] See *In the Interest of J. E. L.*, 223 Ga. App. 269-270 (1) (477 SE2d 412) (1996); *In the Interest of L. M.*, 219 Ga. App. 746, 748 (2) (466 SE2d 887) (1996).

strable negative effect upon his relationship with A. W. Furthermore, given Hunter's repeated declarations in open court that he did not claim A. W. as his child and had "no desire whatsoever to be involved in her life from this day forward," his assertion that there was no evidence of present unfitness is the height of folly.

Court of Appeals Rule 15 (b) authorizes this Court to impose a penalty of up to $1,000 for the filing of a frivolous appeal in a civil case.[9] Under the facts of this case, neither Hunter nor his attorney could have had any reasonable basis to anticipate reversal of the juvenile court's order. Moreover, Hunter's appellate brief contains several statements which are either not supported by or flatly contradicted by the record. For example, the brief states that "the father in this case is committed to taking responsibility for his actions, his responsibility for this child, and has sought counseling for the molestation of his step-daughter"; "[t]he father has . . . taken responsibility for the fathering of this child with his step-daughter"; and "[a]s part of taking responsibility for his actions, he believes very strongly in taking responsibility as the father of this child." None of these statements is supported by any reference to the record, and we do not see how such statements can be squared with Hunter's testimony at the termination hearing. With respect to taking responsibility for his actions and for the fathering of A. W., the transcript shows as follows:

Q. And do you acknowledge that you are the father of [A. W.]? . . .
A. No, I do not acknowledge that.
Q. Do you believe she is your daughter?
A. I think you have DNA evidence to support that fact.
Q. I am asking you what you believe.
A. I do not wish to give my opinion.
Q. Okay. Do you wish to make any claim to [A. W.], as your daughter?
A. No.
Q. You do not?
A. Do not.
Q. So, you have no desire whatsoever to be involved in her life from this day forward, is that correct?
A. That is correct. . . .
Q. Did you have sexual relations with the child's mother, [J. A. W.], sometime nine months before this child was born? Is that correct?
A. I refuse to answer that question. . . .

---

[9] Parental rights termination cases are civil matters. *In the Interest of A. M. R.*, 230 Ga. App. 133, 136 (2) (495 SE2d 615) (1998).

THE COURT: Answer the question, Mr. Hunter.
A. You have DNA evidence to support the likelihood that I did have such a relationship. I have already been convicted for this crime. No further testimony is necessary. The question is quite revocationable [sic].

Testimony at the termination hearing showed that A. W. has been placed with foster parents who intend to seek adoption following termination of parental rights. The filing of this patently frivolous appeal, after Hunter's unambiguous renunciation at the termination hearing of any desire or intent to have any relationship with the child can only operate to delay the final resolution of this sad story. Where a party and his attorney compound the filing of such a frivolous appeal by making outrageous, unsupported factual assertions that fly in the face of the record, we would be remiss if we did not enforce Rule 15. Accordingly, pursuant to Rule 15 (b), we hereby impose a $1,000 penalty against Hunter and his appellate attorney, jointly. Such penalty shall constitute a money judgment in favor of appellee Department of Human Resources against Hunter and his attorney, as set forth in Rule 15 (c).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JANUARY 21, 2000.

*Clark & Towne, Monica M. Wingler,* for appellant.
*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Dyer, McElyea & Thompson, Dana M. Thompson, Cheeley & King, John P. Cheeley,* for appellee.