A00A1367. IN THE INTEREST OF M. D. et al., children.
(534 SE2d 889)

ELDRIDGE, Judge.

The mother appeals from the denial of her motion for new trial, which followed the October 1999 termination of her parental rights to one daughter and the determination that another daughter was deprived. Finding no error, we affirm.

The facts, viewed in the light most favorable to the State as appellee,[1] are as follows: M. D. was born to the mother and her boyfriend in July 1997. The Fulton County Department of Family & Children Services ("DFACS") removed M. D. from her parents' custody shortly after birth, because they were homeless, unemployed, and unable to care for her. In addition, the hospital had reported to DFACS that the mother was schizophrenic. M. D. was adjudicated as deprived and placed in foster care. The mother did not appeal from the deprivation order or from subsequent renewals thereof.

DFACS created reunification plans for the parents and arranged for them to visit M. D., but the visits were sporadic. The parents often missed confirmed appointments to see M. D. and failed to make any significant progress on the case plans. In August 1998, DFACS filed a petition to terminate the parental rights of both the mother and the father.[2]

The mother secured a public housing lease in February 1999, although the father admitted during the termination hearing that he is living there without authorization, potentially jeopardizing the mother's lease. Shortly thereafter, in March 1999, the mother gave birth to K. K. D., also by the father of M. D. The Fulton County Juvenile Court immediately placed custody of K. K. D. with DFACS on the basis that the child was deprived.

On August 6, 1999, the Fulton County Juvenile Court conducted a hearing on DFACS' termination/deprivation petition. During the hearing, the State presented the testimony of a clinical psychologist, Dr. Carolyn N. Johnson, who testified extensively about her opinions regarding the mental and emotional health of the mother and the father. See Division 2, infra. In addition to this testimony, Dr. Johnson also noted that a child who has been in foster care her whole life, such as M. D., is susceptible to "reactive attachment disorder." This disorder results from a lack of permanency in a young child's life and prevents her from forming emotional attachments with others.

The father testified in great detail about the mother's mental condition and his role as caregiver, i.e., in ensuring that she takes her medication each day. The mother did not testify. After hearing the evi-

---

[1] *In the Interest of T. B. R.*, 224 Ga. App. 470, 472 (480 SE2d 901) (1997).

[2] The father's parental rights are not at issue in this appeal.

dence, the trial court terminated the mother's parental rights to M. D. It also found that K. K. D. was deprived and granted DFACS continued custody with the goal of eventual reunification of the child with her parents. The mother appeals from the trial court's order. *Held*:

1. The mother contends that the trial court erred in allowing Dr. Johnson, an adolescent psychologist, to testify as to the possible effects schizophrenia may have on caring for children, because Dr. Johnson is not a psychiatrist. This enumeration appears to be an attack on Dr. Johnson's alleged lack of experience.

When the State moved the trial court to accept Dr. Johnson as qualified as an expert in clinical psychology, the mother's counsel subjected her to voir dire. Dr. Johnson testified that she is an adolescent psychologist and reviewed her credentials. The trial court found that Dr. Johnson was an expert in clinical psychology.[3] Dr. Johnson then testified for the State without objection.

As such, the mother "did not object to the court's [explicit] acceptance of the witness as an expert, and thus failed to preserve this enumeration for appellate review." (Citation and punctuation omitted.) *Moss v. State*, 216 Ga. App. 711, 712-713 (3) (455 SE2d 411) (1995). Further, the mother failed to cite any authority for this enumeration in her brief, so it is abandoned. Court of Appeals Rule 27 (c) (2).

2. In her second enumeration, the mother contends that the trial court erred in allowing the expert to testify that she suffered from schizophrenia, when such opinion allegedly was based upon hearsay. This enumeration lacks merit.

Dr. Johnson testified that she had performed psychological evaluations on the parents. The comprehensive report from this evaluation was admitted into evidence without objection. During this "in-depth assessment," Dr. Johnson collected an extensive personal and family history from the mother; evaluated her mental status; and conducted several tests, including tests regarding intelligence, achievement, personality, and parenting skills. Her intelligence tests showed that the mother functions within the mild to moderate mentally retarded range. Other tests indicated that her parenting skills are impaired due to a post-traumatic stress disorder which, according to the mother, resulted from parental abuse during her childhood.

While interviewing the parents, Dr. Johnson collected information regarding the mother's past diagnosis and current treatment for schizophrenia. The mother reported to Dr. Johnson that she "had heard voices in the past. It has not been for quite some time. She felt if she

---

[3] The difference between a clinical psychologist and a psychiatrist is not in training to diagnose and to use psychotherapy, but in medical training and the prescription of drugs. Both professions use the Diagnostic & Statistical Manual IV (DSM IV) for purposes of diagnosis and treatment. Both have hospital privileges. See OCGA §§ 31-7-160; 31-7-162.

was not taking her medication they might come back." Dr. Johnson observed the mother and opined that "her history of medications, previous hallucinatory experiences, restricted affect, and generally disheveled appearance suggest the presence of a major thought disorder."

The father also gave Dr. Johnson much information about how the couple coped with the mother's mental illness. The father reported that he was responsible for ensuring that the mother took her medication regularly; neither the mother nor the father, however, could name the medications the mother was supposed to take daily.

This anecdotal information was supplemented by the mother's medical records, from which Dr. Johnson determined that her mental health problems may have begun as early as age ten in 1979 and that her first psychiatric hospitalization was in 1985. The medical records also indicated that the mother had received injections of Haldol in the past which, in Dr. Johnson's opinion, indicated that she had not been compliant with taking her oral medication regularly.

Dr. Johnson also expressed concern about the mother's self-reported inability to control her temper and her suicidal ideations. In conclusion, she opined that, "based on all the factors that go into her personality and her diagnostic makeup," the mother would not be able to care for her children.

(a) As to the admissibility of Dr. Johnson's opinion testimony, we note that throughout Dr. Johnson's testimony, the mother failed to issue a single objection. "In this state it is necessary to object to evidence at the time it is actually offered, and failure to do so amounts to a waiver of any objection which the party might have had." (Citations and punctuation omitted.) *Ramey v. Leisure*, 205 Ga. App. 128, 132 (421 SE2d 555) (1992).

(b) Further, in civil cases:

[e]ven when an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather, presents a . . . question as to the weight which should be assigned the opinion. The evidence should go to the [finder of fact] for whatever it's worth. *King v. Browning*, 246 Ga. 46, 47 (1) (268 SE2d 653) (1980).

(Citations and punctuation omitted.) *Roberts v. Baker*, 265 Ga. 902, 903 (1) (463 SE2d 694) (1995). As such, there was no error in the trial court's admission of Dr. Johnson's testimony, particularly in light of the mother's failure to object thereto.[4]

---

[4] Where a statement is received as part of a medical diagnosis or treatment, such state-

3. In her third enumeration, the mother asserts that there was insufficient clear and convincing evidence that her mental illness is likely to continue or will not be remedied. See OCGA § 15-11-81 (a), (b) (4) (A) (iii). However, the mother's contention misses the mark.

The trial court found that, *in addition* to raising concerns about the mother's present and future mental and/or emotional health,[5] the State carried its burden of presenting clear and convincing evidence of parental misconduct or inability by showing the following: that the mother had failed to cooperate with DFACS or to participate in the reunification case plan until six months *after* DFACS filed the termination petition;[6] that she had been homeless until several months *after* DFACS filed its termination petition; that she had failed to contact M. D. on a regular basis since the child's birth;[7] and that she had never financially supported M. D. This evidence of past and present parental misconduct or inability may be considered by the trial court in determining whether deprivation is likely to continue in the future. *In the Interest of T. B. R.*, 224 Ga. App. 470, 474 (1) (c) (480 SE2d 901) (1997). Further, although the mother's recent efforts to bring some stability to her life are admirable, "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citations and punctuation omitted.) *In the Interest of R. N.*, 224 Ga. App. 202, 205 (2) (480 SE2d 243) (1997).

Therefore, pretermitting the question of whether the evidence was sufficient to show that her mental illness was likely to continue,[8] this Court finds that the totality of the evidence presented, viewed in the light most favorable to the appellee, was sufficient to meet the clear and convincing standard required to terminate the mother's parental rights to M. D. See *In the Interest of T. B. R.*, supra at 472. There was no error.

4. This Court also finds that the evidence presented supported the trial court's determination that K. K. D. was deprived. See OCGA §§ 15-11-2 (8) (A); 15-11-41 (b).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

---

ment is not deemed hearsay. OCGA § 24-3-4; *Southern R. Co. v. Lawson*, 256 Ga. 798 (353 SE2d 491) (1987); *Keri v. State*, 179 Ga. App. 664, 665-667 (1) (347 SE2d 236) (1986); cf. *In the Interest of A. S. M.*, 214 Ga. App. 668 (448 SE2d 703) (1994); *Brown v. State*, 206 Ga. App. 800 (427 SE2d 9) (1992).

[5] See OCGA § 15-11-81 (b) (4) (B) (i).

[6] See OCGA § 15-11-81 (b) (4) (C) (iii) (statute requiring parent to "comply with a court ordered plan designed to reunite the child with the parent").

[7] See OCGA § 15-11-81 (b) (4) (C) (i) (statute requiring that the parent "develop and maintain a parental bond with the child in a meaningful, supportive manner").

[8] The expert testimony was that schizophrenia is pervasive and practically intractable and that medication only controls the symptoms, but does not always work or work effectively.

DECIDED MAY 23, 2000.

*Derek M. Wright,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney Gerneral, Shalen A. Sgrosso, Laura W. Hyman, Assistant Attorneys General, Rubin, Winter, Rapoport & Hall, Robert E. Hall, Sanders B. Deen,* for appellee.