541 S.E.2d 61 (2000)
246 Ga. App. 426
In the Interest of D.S.R., a child.
No. A00A1759.
Court of Appeals of Georgia.
October 17, 2000.
*62 Anthony C. Procacci, Morrow, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Assistant Attorney General, Gloria D. Reed, Jonesboro, for appellee.
BARNES, Judge.
D.S.R.'s natural mother appeals the judgment of the juvenile court terminating her parental rights to the child. She contends the juvenile court erred by considering stale evidence of her mental health which was introduced without a proper foundation, by considering hearsay evidence of her medical condition, and by entering the following findings of fact: (1) that the citizens review panel recommended termination, (2) that she had difficulty learning, comprehending and following complex directions about D.S.R.'s therapy, and (3) that the mother had a verifiable medical deficiency that made her unable to care for D.S.R. She also contends the final order does not contain explicit factual findings that are supported by clear and convincing evidence.
Viewed in support of the judgment, the evidence shows that since he was born, D.S.R. has never been in the custody of his mother. He was immediately taken into the custody of the Department of Family & Children Services because a social worker at the hospital reported that his parents were not prepared to take him home and DFCS's investigation showed that the parents' home was not suitable for him. D.S.R. has two siblings who are in the custody of foster parents. The mother, who was 24, had been in DFCS's custody because of abuse and neglect by her parents. The mother has several mental and psychological disorders and did not appeal the juvenile court's deprivation or nonreunification orders concerning D.S.R.
Until shortly before the termination hearing, the mother lived in the same house that was found to be unacceptable in the juvenile court's deprivation order. D.S.R. has cerebral palsy. He has difficulty learning to crawl and sit up, requires medication and special exercise, and has a problem with aspiration that requires a special liquid diet to prevent him from choking.
The mother has mild mental retardation and is suffering from post-traumatic stress disorder. She has been diagnosed with fetal alcohol syndrome and has an IQ between 55 and 70. Her daily living skills are at the thirteen-year-old level and her communication skills are at the six-and-one-half-year level; she communicates orally very well, but cannot read or write well. It is doubtful that she could understand complex instructions or that she could be taught the exercises necessary for D.S.R.'s physical therapy. It would be extremely difficult for the mother to care for D.S.R. without assistance from others.
According to D.S.R.'s foster mother, a critical care intensive care nurse, after she noted health problems, D.S.R. was diagnosed with cerebral palsy and has multiple special needs. He requires aerosol treatments and chest percussion to treat the symptoms of cerebral palsy and has trouble swallowing that requires a special diet. He has difficulty with balance, standing, and pulling himself up; he has neurological problems, needed occupational, physical, and speech therapy, and needed 24-hour care. The foster mother believed that it would be difficult for someone like the mother to care for D.S.R., and she would not leave him with a 13-year-old because she did not believe that a person of that maturity level could provide for his medical and other needs.
According to the mother's testimony, she did not have permanent living arrangements, her only source of income was disability payments, the longest she ever held a job was eight months, and she had been taking medicine for depression but decided on her own to stop. The guardian ad litem appointed for *63 D.S.R. recommended that the mother's parental rights be terminated. The juvenile court terminated the parental rights of the mother and the father. Only the mother, however, has appealed.
1. The standard of review in parental rights termination cases is whether, after viewing the evidence in a light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights should have been lost. In the Interest of J.H., 210 Ga.App. 255, 258(1), 435 S.E.2d 753 (1993). On appeal, we defer to the trial court's factfindings and will affirm unless the appellate standard is not met. In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997). Further, we determine sufficiency of the evidence, but neither weigh the evidence nor determine witness credibility. In the Interest of R.P., 216 Ga.App. 799-800(1), 456 S.E.2d 107 (1995).
2. The mother's allegations concerning the admission of hearsay are without merit. Assuming that some hearsay was introduced, this admission was clearly harmless in light of the other evidence supporting the termination of her parental rights. A party seeking a reversal must show not only error, but injury arising from the error alleged. Ga. Power Co. v. Bishop, 162 Ga.App. 122, 126(6), 290 S.E.2d 328 (1982). Additionally, even assuming that some of the evidence of the mother's condition was stale, this would go to the weight to be given to the evidence and not its admissibility.
3. The mother's contention that the witnesses were not authorized to rely upon previous diagnoses of the medical conditions of the mother and child that were contained in their medical reports and records is also without merit. The witnesses were caseworkers and nurses who were involved in the treatment or daily lives of the mother and child. Moreover, the information that the mother now complains about was introduced without objection as parts of other exhibits. Under the circumstances, the witnesses were authorized to rely upon the medical and departmental records and to testify, based upon this information, about the mother's mental status and the child's special needs.
The applicable law in Georgia is OCGA § 24-9-67, which provides: the opinions of experts on any question of science, skill, trade or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses. Provided an expert witness is properly qualified in the field in which he offers testimony, and the facts relied upon are within the bounds of the evidence, whether there is sufficient knowledge upon which to base an opinion or whether it is based upon hearsay goes to the weight and credibility of the testimony, not its admissibility.
(Citations and punctuation omitted.) Orkin Exterminating Co. v. McIntosh, 215 Ga.App. 587, 592-593(4), 452 S.E.2d 159 (1994). The fact that the witnesses' opinions were based in part on hearsay did not render their testimony inadmissible. "[T]he lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather, presents a [jury] question as to the weight which should be assigned the opinion." In the Interest of M.D., 244 Ga.App. 156, 158(2)(a), 534 S.E.2d 889 (2000), quoting King v. Browning, 246 Ga. 46, 47(1), 268 S.E.2d 653 (1980).
4. Although the trial court's findings of fact stated the wrong date for the citizens review panel's recommendation to terminate the mother's parental rights, the mother has not shown how such an error was harmful. Therefore, this enumeration of error is also without merit. Ga. Power Co. v. Bishop, supra, 162 Ga.App. at 126, 290 S.E.2d 328.
5. Viewed in its totality, the evidence discussed above fully supports the termination of the mother's parental rights and the juvenile court did not err by doing so. Given the mother's longstanding and continuing incapacity and the special medical needs of the child, no other option was warranted.
Judgment affirmed.
BLACKBURN, P.J., and ELDRIDGE, J., concur.