554 S.E.2d 228 (2001)
251 Ga. App. 232
In the Interest of D.A.E., a child.
No. A01A0981.
Court of Appeals of Georgia.
August 16, 2001.
*229 John W. Bass, Jr., Cairo, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Clark & Bellamy, Andrew W. Clark, Brian D. Bellamy, Thomasville, for appellee.
BLACKBURN, Chief Judge.
Appellant, the biological mother of D.A.E., appeals the juvenile court's termination of her parental rights, contending that the evidence was insufficient to support the termination.[1] For the reasons set forth below, we affirm.
On appeal, we must determine
whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Citation and punctuation omitted.) In the Interest of R.N.[2]
The record shows that, on May 12, 1997, D.A.E. was placed in the temporary legal custody of the Department of Family & Children Services (DFACS) because his mother had been arrested for possession of cocaine. Following D.A.E.'s removal, appellant was presented with a case plan which required her to become drug free, find a stable home, and attend parenting classes.
At the time of the termination hearing, D.A.E. had been in DFACS' custody for three years, and appellant had been subject to eight different case plans. During this time, appellant never became drug free and never obtained suitable housing for her son.
Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is "present clear and convincing evidence of parental misconduct or inability." [OCGA § 15-11-[94](a)]. Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation *230 is likely to cause serious physical, mental, emotional, or moral harm to the child. [OCGA § 15-11-[94](b)(4)(A)].... In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
In the Interest of V. S.[3]
No issue remains as to whether the child in this case is deprived. In the termination proceedings, the juvenile court took judicial notice of a prior deprivation order. See In the Interest of J.L. Y.[4] Moreover, appellant never appealed the original deprivation order, and the record provides clear and convincing evidence that the child was given insufficient care and maintenance.
Pam Glover, a DFACS caseworker, testified that, at the time that D.A.E. was initially taken by DFACS, he was found at the putative father's home, where he was improperly clothed, red-faced, feverish, and in need of medical care. D.A.E. remained in DFACS custody for the next three years while appellant was in and out of jail. During this extended period of time, appellant completed only one goal of her case plan which required her to attend parenting classes.
Appellant did not satisfy any other goals of her case plan. Appellant never became drug free or obtained stable housing. After she was released from prison on probation in June 1998, appellant found housing and employment with the assistance of DFACS. Just over a month later, however, appellant quit her job, began using cocaine again, and needed DFACS' assistance to pay her rent and utilities. And, although appellant enrolled in a drug treatment program, she never finished it, and, on several occasions, she failed to attend classes while she continued to abuse drugs.
During the period that followed, appellant was incarcerated twice for possession of cocaine, and she was in jail at the time of the termination hearing. During the time that she was not in jail, appellant admitted that she used cocaine, that she was occasionally homeless, and that she traded sexual favors for a place to stay.
This evidence supports the juvenile court's determination that the deprivation is likely to continue.
Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. The court was entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue [if] the child was reunited with his mother.
(Citations and punctuation omitted.) In the Interest of R. N., supra at 204(1)(c), 480 S.E.2d 243.
The record also supports a finding that D.A.E. is likely to be harmed by the continued deprivation. As discussed above, D.A.E. has been forced to grow up without his mother, who has been incarcerated for drug abuse the majority of his life. Furthermore, even after D.A.E. was taken away from her, appellant failed to satisfy the goals of her case plan and continued to use cocaine.
In addition, the record supports a finding that termination of appellant's parental rights is in the best interests of D.A.E. The same factors which show a parent's inability to properly care for her child may also prove that termination of her parental rights is in the best interest of that child. In the Interest of G.K. J.[5] Moreover, evidence at the termination hearing showed that D.A.E. considered his foster mother, who wished to adopt him, as his true mother. On the other hand, D.A.E.'s bond with appellant was, at best, tenuous. And, although appellant now pledges that she will overcome her addiction and find stable housing, "`the decision as to a child's future must rest on more than positive *231 promises which are contrary to negative past fact.'" In the Interest of D.I.W.[6]
Judgment affirmed.
POPE, P.J., and MIKELL, J., concur.
NOTES
[1] D.A.E.'s putative biological father does not appeal the termination of his parental rights.
[2] In the Interest of R. N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
[3] In the Interest of V. S., 230 Ga.App. 26, 27, 495 S.E.2d 142 (1997).
[4] In the Interest of J.L. Y., 184 Ga.App. 254(1), 361 S.E.2d 246 (1987).
[5] In the Interest of G.K. J., 187 Ga.App. 443, 444(2), 370 S.E.2d 490 (1988).
[6] In the Interest of D.I. W., 215 Ga.App. 644, 646(1), 451 S.E.2d 804 (1994).