574 S.E.2d 339 (2002)
258 Ga. App. 143
In the Interest of C.B., a child.
No. A02A1570.
Court of Appeals of Georgia.
October 23, 2002.
*340 Suzanne Whitaker, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., James T. Chafin III, for appellee.
RUFFIN, Presiding Judge.
The biological father of C.B. appeals the juvenile court's order terminating his parental rights. He asserts that the evidence was insufficient to support the termination, that the court failed to enter specific findings of fact supporting the termination, and that the court erroneously denied him his right to counsel.[1] Finding the evidence sufficient and no reversible error, we affirm.
1. The standard of review for orders terminating parental rights requires that "we view the evidence in a light most favorable to the juvenile court's ruling and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated."[2] So viewed, the evidence shows that C.B. was born on November 16, 1992. On April 6, 2000, the Henry County Department of Family & Children Services ("DFCS") filed a deprivation petition in the juvenile court asserting that C.B.'s father had been arrested for child molestation and cruelty to children. The criminal charges stemmed from alleged instances in which the father and mother played darts with C.B. and her two half-siblings[3] while the whole family was nude. The father was on probation for an unrelated prior conviction at the time of his arrest, and his probation was revoked.
On the day the petition was filed, the juvenile court held a brief hearing to provide emergency care and shelter for C.B. The father was incarcerated and did not attend the hearing. However, the transcript reflects that both the father and mother were represented at the hearing by counsel, James Watkins. Based on a stipulation of the parties that there was probable cause to believe that the father had sexually molested the children and that the mother had neglected them, the juvenile court ordered that C.B. be placed in DFCS's custody.
On May 18, 2000, the juvenile court conducted a hearing on the deprivation petition. The father appeared at the hearing, but was unrepresented by counsel. When the hearing commenced, the judge asked the father whether he had spoken to Ms. Hayes, the *341 attorney the court had apparently appointed to represent him. Hayes was not at the hearing, and the father told the court that he thought he was represented by Suzanne Whitaker, the attorney defending him in the criminal proceedings. The judge then asked the father whether he wanted a lawyer in this case, and the father responded affirmatively. Although the court apparently called Whitaker to come to the hearing, she was unavailable, and the deprivation hearing proceeded with the father unrepresented. After the hearing, the court entered an order finding C.B. deprived and awarding temporary custody to DFCS. In its order, the court also formally appointed Whitaker to represent the father and prohibited the father from visiting C.B.
DFCS developed a reunification plan for the father, and, on June 7, 2000, the parties and their attorneys, including Whitaker, attended a hearing to review the plan. Among the plan goals were requirements that the father maintain contact with C.B., develop parenting skills, resolve his criminal charges, remain drug and alcohol free, and provide financial support for C.B. After consulting with counsel, the father agreed to the plan, which the court approved.
On September 7, 2000, a grand jury indicted the father on three counts of child molestation relating to his conduct with the three children. Count 3 of the indictment charged that, between January 1, 1998, and March 27, 2000, both the father and mother "unlawfully perform[ed] an immoral and indecent act[ ] to ... [all three children, including C.B.], children under the age of 16 years, with intent to arouse and satisfy the sexual desires of said accused by playing games with said children at a time when the children and the accused were all nude."[4] On November 6, 2000, the father pled guilty to committing child molestation under Count 3, and the trial court sentenced him to ten yearsthree to serve in prison and seven years of probation.[5] A special condition of the probation prohibits the father from having any contact with the children.
On August 8, 2001, DFCS petitioned the juvenile court to terminate the father's parental rights in C.B.[6] The court conducted a hearing on the petition on November 6, 2001. At the time of the hearing, C.B. was living with her aunt, where she was placed approximately 18 months earlier. C.B. was in the third grade, had a "mild intellectual disability," and required speech therapy. A DFCS caseworker testified that, before he went to prison, the father cooperated with DFCS and attended parenting classes, but did not visit the children at DFCS's offices. According to the caseworker, DFCS records showed that, after being incarcerated, the father did not have any contact with C.B. or pay any child support. A certified copy of the father's conviction was admitted into evidence.
The father testified about his attempts to comply with the case plan, disputed the caseworker's account that he had never visited C.B., and elaborated on his reasons for pleading guilty to child molestation. Specifically, the father stated that he had attended 13 out of 15 parenting classes and that, while he was out on bond, he worked for his sister and gave her $50 of child support for C.B., not every "week or every other week," but "when [he] could." The father also maintained that, before he was incarcerated, he visited C.B. at DFCS on a weekly basis for at least ten weeks. As for his conviction for molesting C.B., the father admitted he had played games with the children while nude, but maintained that the conduct was not inappropriate. He testified: "I didn't think it was anything wrong with it, you know, a family doing what theyyou know, what they wanted to do or whatever in their own personal home." According to the father, he pled guilty to the molestation charge to avoid a longer prison sentence. Finally, the father acknowledged that, while he was living with *342 C.B.'s mother, the police were "called out once or twice when [he] and [the mother were] ... arguing and fighting." Based on this evidence, the juvenile court terminated the father's parental rights in C.B.
Under the two-step inquiry for terminating parental rights, a court must first determine "whether there is clear and convincing evidence of parental misconduct or inability."[7] Parental misconduct or inability is established where it is shown:
1) that the child is deprived; 2) that the lack of proper parental care or control is the cause of the deprivation; 3) that the child's deprivation is likely to continue or will not be remedied; and 4) that continued deprivation is likely to cause serious physical, mental, or moral harm to the child.[8]
Under the second step of the inquiry, the court must determine whether termination is in the best interest of the child.[9]
In this case, there was clear and convincing evidence of parental misconduct or inability. The father does not dispute that there was sufficient evidence showing C.B. was deprived, and, even if challenged, C.B.'s deprivation was established by the juvenile court's unappealed order finding the child deprived.[10] The father also does not dispute that his lack of parental care or control caused the deprivation. In any event, conviction and imprisonment for a felony offense and emotionally abusive and egregious conduct toward a child are factors that, if present, a court may consider in determining whether the child is without proper parental care or control.[11] And, while a parent's felony conviction and "imprisonment in consequence thereof is not ipso facto sufficient to support a finding that a child lacks parental care and control, incarceration for a crime will support such a finding when adequate aggravating circumstances are shown to exist."[12] There were adequate aggravating circumstances in this casethe father pled guilty and was imprisoned for molesting the daughter who was the subject of the termination proceedings.[13] Finally, although disputed by the father, evidence showed that he has had absolutely no contact with C.B. from the time she was removed from the home and that he provided only minimal financial support before being incarcerated.[14]
As for evidence that C.B.'s deprivation is likely to continue or will not be remedied, we are struck by the father's apparent inability to recognize the harmful nature of his conduct. Despite the father's attempts to cast his guilty plea to child molestation in a favorable light, the fact remains that he pled guilty to playing games with C.B. and her siblings in the nude, with the "intent to arouse and satisfy [his own] sexual desires." Such conduct is relevant in considering whether the deprivation is likely to continue.[15] Further, the father is prohibited from having any contact with C.B. until his probation expires, which will occur in 2010. Thus, we cannot discern how the relationship would improve in the foreseeable future.
*343 Attacking the second part of the inquiry, the father asserts that the juvenile court erred in ruling that C.B.'s best interest would be served by terminating his parental rights. But he offers no argument to support this assertion, and it is, therefore, treated as abandoned.[16] Moreover, the factors we addressed above, which established the father's inability to properly care for C.B., also prove that the termination of his parental rights is in the child's best interest.[17]
2. The father also contends that the juvenile court erred in failing to make explicit findings of fact regarding either the alleged deprivation or the likelihood of continued deprivation. We disagree. Although the father correctly argues that a court is required to make explicit findings,[18] the record belies his contention that the court here "merely recited the statutes." The court's order details sufficient facts to support its conclusion that C.B. was deprived and that such deprivation was likely to continue. Accordingly, this assertion has no merit.
3. Finally the father asserts that the juvenile court "erred in not having [him] present during all proceedings and in not appointing counsel and ensuring that consistent counsel was available to [him] throughout the proceedings." We agree with the father that he was entitled to counsel throughout the proceedings. The right is established by OCGA § 15-11-6(b), which provides in part that,
[e]xcept as otherwise provided under this article, a party is entitled to representation by legal counsel at all stages of any proceedings alleging ... deprivation and if, as an indigent person, a party is unable to employ counsel, he or she is entitled to have the court provide counsel for him or her. If a party appears without counsel, the court shall ascertain whether such party knows of his or her right to counsel and to be provided with counsel by the court if he or she is an indigent person. The court may continue the proceeding to enable a party to obtain counsel and shall provide counsel for an unrepresented indigent person upon the request of such a person.
In this case, it is clear that the trial court erred in failing to provide counsel to the father at the deprivation hearing. The father asked for counsel when the hearing commenced, and the hearing proceeded with him being unrepresented. Although we are troubled by the juvenile court's cavalier treatment of the father's request, we nonetheless find that the error does not merit reversal.
Because this is a civil matter not involving a state or federal constitutional right to counsel,[19] the father is required to show harm as well as error to warrant reversal.[20] The father has not done so. Indeed, beyond his bare assertion that he was entitled to counsel, the father advances no argument and points to no evidence that he was harmed. And, considering that the father pled guilty to molesting C.B., she was clearly deprived. Moreover, the father never appealed the juvenile court's deprivation order, and in this appeal he does not challenge the court's finding of deprivation. Thus, we conclude that the father was not harmed by the court's erroneous deprivation of his right to counsel.
Finally, although the father also claims that the court erred in conducting the emergency shelter hearing without him present, and that his appointed counsel, Whitaker, did not receive certain notices, he has not shown how he was harmed by these asserted errors. The father was represented by counsel at the emergency shelter hearing, and there is no evidence that appointed counsel's representation *344 of him was prejudiced by any failure to receive notice.
Judgment affirmed.
BARNES, J., and POPE, Senior Appellate Judge, concur.
NOTES
[1] In violation of Court of Appeals Rule 27(c), the father enumerated six errors, but failed to separately number the arguments in his brief to correspond to the asserted errors. The rule is intended to assist the Court in reviewing the father's appeal and to ensure that we do not overlook an enumerated error or corresponding argument.
[2] In the Interest of J.V., 253 Ga.App. 798, 802, 560 S.E.2d 725 (2002).
[3] The two siblings are a half-brother who was 11 years old and a half-sister who was 13 years old when the petition was filed. Both siblings were the offspring of C.B.'s natural mother, but not her father. Although C.B.'s siblings were also the subjects of a petition to terminate the mother's parental rights, their status is not at issue in this appeal.
[4] The indictment also charged the father with molestation for inappropriately touching C.B.'s half-sister.
[5] The mother pled guilty to one count of cruelty to children and was sentenced to ten years probation.
[6] DFCS also petitioned the court to terminate the mother's rights, but the final hearing on that petition was continued for 90 days following the final hearing in the instant case.
[7] (Punctuation omitted.) In the Interest of L.M., 219 Ga.App. 746, 748(2), 466 S.E.2d 887 (1995). See also OCGA § 15-11-94(a).
[8] In the Interest of L.M., supra. See also OCGA § 15-11-94(b)(4)(A).
[9] See In the Interest of L.M., supra.; OCGA § 15-11-94(a).
[10] See In the Interest of L.M., supra.
[11] See OCGA § 15-11-94(b)(4)(B) (enumerating six factors [that] a court may consider). Although the father argues that the court must consider all six factors because the Code section provides that a court "shall consider" the factors, it is clear that such consideration is required only if there is evidence concerning a particular factor. See, e.g., In the Interest of J.P., 253 Ga.App. 732, 738, 560 S.E.2d 318 (2002) (stating that egregious conduct "is one factor that a court may consider in determining whether a child is without proper parental care and control") (emphasis supplied).
[12] In the Interest of L.M., supra.
[13] See id.
[14] See OCGA § 15-11-94(b)(4)(C).
[15] See In the Interest of E.N.H., 216 Ga.App. 209, 210-211, 453 S.E.2d 778 (1995) (parent's "past molestation of young females is proper for consideration on whether such deprivation will continue in the future").
[16] See Court of Appeals Rule 27(c)(2).
[17] See In the Interest of D.A.E., 251 Ga.App. 232, 234, 554 S.E.2d 228 (2001).
[18] See In the Interest of A.D.L., 253 Ga.App. 64, 67(2), 557 S.E.2d 489 (2001).
[19] See In the Interest of A.M.R., 230 Ga.App. 133, 136(2), 495 S.E.2d 615 (1998) ("[n]o state or federal constitutional right to counsel is involved because a parental termination action is a civil matter, not a criminal proceeding").
[20] See In the Interest of D.S.R., 246 Ga.App. 426, 427(2), 541 S.E.2d 61 (2000). Cf. State v. Wooten, 273 Ga. 529, 532, n. 14, 543 S.E.2d 721 (2001) (in a criminal case the total deprivation of the right to counsel is a constitutional error that is not subject to a harmless error analysis).