A97A2408. IN THE INTEREST OF A. M. R., a child.
(495 SE2d 615)

BEASLEY, Judge.

Susan Lamont, while in jail for disorderly conduct, consented to the placement of her seven-month-old daughter A. M. R. (d.o.b. 01/28/94) in a foster home pending Lamont's compliance with a reunification plan. After two and one-half years of noncompliance, the juvenile court conducted a lengthy hearing and terminated Lamont's parental rights.

The court heard evidence that since the placement Lamont had been arrested for various criminal offenses, consistently failed to abide by the reunification plan, moved twelve times back and forth between Georgia, Florida, and New York, lived with two men other than her husband, relinquished custody of her five-year-old son to her admittedly abusive husband, rarely visited A. M. R., and abandoned the child within a week on one occasion to live with a boyfriend. She obtained a psychological evaluation (mandated two years earlier by the reunification plan) which showed various mental mala-

dies, including depression and a borderline personality disorder.

Three errors are asserted. First, the evidence did not support the court's finding of a medically verifiable deficiency of her mental health that rendered her unable to provide for the child under OCGA § 15-11-81 (b) (4) (B) (i). Second, the evidence did not support the court's finding she failed to communicate or to make a bona fide attempt to communicate with the child under OCGA § 15-11-81 (b) (4) (C) (i). Third, she was not afforded appointed counsel at all stages of the proceedings as required by OCGA § 15-11-30.

1. To terminate parental rights under OCGA § 15-11-81 (a), "[t]he trial court must first determine whether there is present clear and convincing evidence of parental misconduct or inability. Such conduct or inability may be proved by showing, inter alia, that (1) the child is deprived; (2) such deprivation is caused by the lack of proper parental care or control by the parent in question; (3) the deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. A deprived child is one who is without proper parental care or control." (Citations and punctuation omitted.) *In the Interest of M. E. C.*, 228 Ga. App. 9 (1) (491 SE2d 107) (1997).

In making this determination, the court may consider numerous factors. One is a "medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-81 (b) (4) (B) (i). A second could be evidence of past physical, mental, or emotional neglect of the child or of another child by the parent. OCGA § 15-11-81 (b) (4) (B) (v). A third may be whether the parent has unjustifiably failed to communicate meaningfully with the child for a period of one year or longer while the child was in state custody. OCGA § 15-11-81 (b) (4) (C) (i). A fourth could be whether the parent has complied with the reunification plan in the last year. OCGA § 15-11-81 (b) (4) (C) (iii).

The court found deprivation based on these four particular factors. Challenging only two of them, Lamont does not question the court findings of her arrests, the filthy and confrontational living environment in which she raised the child, her New York indictment for failing to care for her son who was found abused, and her failure to abide by the reunification plan by, among other things, failing to provide a stable home and income.

"The standard of review of a juvenile court's decision to terminate parental rights is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. The reviewing court is to defer

to the lower court in the area of factfinding and should affirm unless the appellate standard of review, here the rational factfinder test, is not met." (Citations and punctuation omitted.) *M. E. C.*, supra, 228 Ga. App. at 10 (1).

(a) *Medically Verifiable Deficiency.* Lamont contends the evidence did not support a finding that a medically verifiable deficiency of her physical, mental or emotional health rendered her unable to provide for the needs of A. M. R. She cites the lack of expert testimony and the absence in the psychological evaluation of any opinion that her mental problems interfered with her ability to provide care and support for the child.

The psychological report of the county mental health center was admitted without objection. It detailed findings that Lamont (a) had poor insight, (b) had poor judgment, (c) lacked impulse control making it difficult for her to control anger, (d) made repeated suicidal gestures, (e) suffered from depression as a result of a history of early sexual abuse, (f) had a history of unstable relationships and was more concerned with the loss of male relationships than with her children (she made a pact with a boyfriend that she would give up her son if he would give up his child), (g) engaged in manipulative and acting out behaviors, and (h) exhibited the classic symptoms of a borderline personality disorder. Lamont adamantly denied any problems and refused treatment. Her prognosis was poor, and she intended to remain for the indefinite future on social security payments which she received for mental disability demonstrated by her suicidal gestures.

This evidence and Lamont's erratic behavior provided ample reason to find Lamont's mental deficiency rendered her unable to care for A. M. R., even though the report itself did not discuss the impact of her mental condition on her child-care ability. Testimony from social workers confirmed this impact.

(b) *Failure to Communicate.* Lamont contends she made reasonable efforts to visit and otherwise communicate with A. M. R., given Lamont's residence in New York and her limited income. This argument was better directed to the factfinder than to this tribunal. We review only the sufficiency of the evidence to determine whether a rational factfinder could find clear and convincing evidence the parent made little attempt to communicate with or visit the child.

The reunification plan was updated every six months and sent to Lamont because it mandated that she visit the child as often as possible, hopefully monthly. Even though Lamont agreed to this plan, she visited her child only twice in the first six months — once right after her release from jail and once five months later. Her explanation is that she was out-of-state, having gone to live with relatives or boyfriends in Florida and then New York. Yet on at least one occasion

she was actually in the local Bulloch County Department of Family & Children Services office but made no attempt to visit A. M. R. During the next six months, Lamont committed to visiting A. M. R. on her birthday, but failed to visit then or at any time.

During the following six months, at Lamont's request, A. M. R. was placed with a relative in New York, where Lamont was living. Even though Lamont committed to care for A. M. R., within a week she abandoned the child in favor of living with a boyfriend in New York and then later in Florida. The relative returned the child to Bulloch County DFACS, and for the next 18 months until the termination hearing Lamont did not visit the child a single time. She claims a lack of travel funds, but during this time she was occasionally in Georgia as she traveled between Florida and New York. Nor did she request any travel funds from Bulloch County DFACS, which were potentially available. During the sporadic times she called the foster home, usually collect, she focused not on the child but on herself, and the last time upset the child. Cards were also infrequent, with none in the six months prior to the hearing.

The evidence supported the finding that Lamont failed to make bona fide attempts to communicate with her child in a meaningful, supportive, parental manner.

2. OCGA § 15-11-30 (b) provides that a party including a parent, see *Sanchez v. Walker County Dept. of Family &c. Svcs.*, 237 Ga. 406, 410-411 (229 SE2d 66) (1976), "is entitled to representation by legal counsel at all stages of any proceedings alleging . . . deprivation and if, as an indigent person, he is unable to employ counsel, he is entitled to have the court provide counsel for him. If a party appears without counsel, the court shall ascertain whether he knows of his right to counsel and to be provided with counsel by the court if he is an indigent person. The court may continue the proceeding to enable a party to obtain counsel and shall provide counsel for an unrepresented indigent person upon his request." See *Wilkins v. Dept. of Human Resources*, 255 Ga. 230 (337 SE2d 20) (1985); *K. E. S. v. State of Ga.*, 134 Ga. App. 843, 846-847 (1) (A) (216 SE2d 670) (1975). No state or federal constitutional right to counsel is involved because a parental termination action is a civil matter, not a criminal proceeding. See *In the Interest of B. G.*, 225 Ga. App. 492, 495 (2) (b) (484 SE2d 293) (1997); *Bergmann v. McCullough*, 218 Ga. App. 353, 356 (4) (461 SE2d 544) (1995).

Lamont complains she was not provided appointed counsel until shortly before the 1997 termination hearing. But she did not request counsel until then, even though she was specifically informed of her right to such in the summons she received for the initial September 1994 deprivation hearing and was repeatedly informed of a right to be represented at her case reviews.

Lamont does not identify any proceeding at which she appeared unrepresented. Where one is not represented by counsel, to appear means to appear in person. Black's Law Dictionary (5th ed.), p. 89; see *Bryan v. Ga. Pub. Svc. Comm.*, 238 Ga. 572, 575 (234 SE2d 784) (1977). Lamont concedes she received the summons for the deprivation hearing but did not attend. The only other court involvement prior to the termination hearing was when it approved case plans, without a hearing. Lamont agreed to the first case plan before it was submitted to the court. The other case plans were submitted after case reviews. Each case plan, all of which were received by Lamont, notified her she had five days to request a hearing before the court if she disagreed with the plan, and if she did not request a hearing the plan would be submitted to the court and issued in the form of a court order. She made no such request.

The statute requires the court to inform an unrepresented party of her right to appointed counsel, but only if that "party appears without counsel." OCGA § 15-11-30 (b). Lamont made no such appearance. Nor did she request counsel, although the summons for the deprivation hearing informed her of this right. A request is required before an appointment is made. OCGA § 15-11-30 (b). In the summons for the termination hearing, Bulloch County DFACS for a second time informed Lamont of her right to appointed counsel. See OCGA § 15-11-26 (e). At her request, Lamont was appointed counsel and was represented at the termination hearing. That is the only time she appeared in person at a court proceeding.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED JANUARY 9, 1998.

*Jack B. Williamson, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Gary L. Mikell*, for appellee.