536 S.E.2d 533 (2000)
244 Ga. App. 626
In the Interest of L.S., a child.
No. A00A0599.
Court of Appeals of Georgia.
June 26, 2000.
*534 Kristopher Shepherd, Lawrenceville, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Laura W. Hyman, Assistant Attorneys General, Garcia & Powell, Tony D. Coy, Athens, for appellee.
POPE, Presiding Judge.
J.T. appeals the juvenile court order terminating his parental rights. He claims that the court erred in finding that he had abandoned his child, that he had failed to properly file a legitimation petition, and that he had abandoned his opportunity interest to father his child. We find no merit in these enumerations of error and affirm.
J.T. is the biological father of L.S., who was born on September 10, 1992. L.S. lived with her mother until October 1995. After leaving her mother's custody, L.S. lived with her maternal grandmother and aunt for several months. On December 12, 1995, the Athens-Clarke County Department of Family & Children Services ("DFCS") gained temporary custody of L.S. L.S. and her half-brother were placed in their current foster home in July 1996; the foster parents wish to adopt both children.
After determining that it was in L.S.'s best interests, DFCS petitioned to terminate the parental rights of J.T. and L.S.'s mother. The mother voluntarily surrendered her parental rights on January 7, 1998. The court heard J.T.'s case on April 13, 1998. On April 5, 1999, the court issued an order terminating his parental rights. The court found that J.T. had abandoned L.S. as contemplated by OCGA § 15-11-81(b)(3).
OCGA § 15-11-81 establishes a two-step process for considering parental rights *535 cases. The court is first required to determine whether there is clear and convincing evidence of parental misconduct or inability. If there is parental misconduct or inability, the court considers whether termination of parental rights is in the best interest of the child. In the Interest ofC.D.A., 238 Ga.App. 400, 401, 519 S.E.2d 31 (1999). Abandonment of a child is a ground for termination of parental rights. See OCGA § 15-11-81(b)(3).
"In order to find an abandonment, there must be sufficient evidence of an actual desertion, accompanied by an intention to sever entirely, so far as possible to do so, the parental relation, throw off all obligations growing out of the same, and forego all parental duties and claims." [Cits.]
In the Interest of J.C.P., 167 Ga.App. 572, 573, 307 S.E.2d 1 (1983).
The standard of appellate review is "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. [Cit.]" Sims v. Sims, 171 Ga.App. 99, 100, 318 S.E.2d 805 (1984). "This court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." In the Interest of S.J.C., 234 Ga.App. 491, 492, 507 S.E.2d 226 (1998).
1. J.T. and L.S.'s mother separated three months after L.S. was born, and L.S. remained with her mother. When L.S.'s mother gave birth to her half-brother in 1995, the baby had cocaine in its system. J.T. knew of this, and he also knew that the mother had lost her apartment, but he took no formal steps to claim his daughter. Because of the mother's drug use, DFCS moved for temporary custody of L.S. J.T. showed only marginal interest in the child after she moved in with her grandmother and then her aunt. The grandmother testified that J.T. visited L.S. only once or twice. A DFCS caseworker testified that the last documented visit of L.S. by J.T. was at a relative's home in January or February 1996. DFCS had no evidence of visits or contact through phone call or letter from early 1996 through the date of the hearing, a period of over two years. There is no evidence that J.T. provided any monetary support to L.S. once she entered foster care.
A citizens review panel held four panel reviews with respect to L.S. J.T. did not attend any of the reviews or attempt to comply with the panel's goals for achieving custody of his daughter, including the payment of $5 a month in child support. Although the panel did not formally notify J.T. of the reviews, the case plan was explained to him in an October 23, 1995 conversation with a DFCS employee.
At the time of the April 13, 1998 termination hearing J.T. was incarcerated and serving a five-year sentence for selling cocaine. He had not seen his daughter in over two years. J.T. testified that while incarcerated he did not write L.S. In support of J.T.'s position, the evidence also shows that the mother acknowledged J.T.'s contribution to her support during pregnancy and hospitalization for the birth of the child (although she also indicated that J.T. had not supported L.S.). J.T. spent time with L.S. before his incarceration, including the Christmas immediately before his arrest. He claimed that he did not contact DFCS about L.S. while he was in prison because he was not aware that DFCS had custody of his daughter. L.S. called J.T. "daddy."
The evidence is conflicting as to whether J.T. intended to sever parental relations with L.S. Our analysis here is aided by In the Interest of B.D.C., 256 Ga. 511, 350 S.E.2d 444 (1986). There, evidence presented to support termination of parental rights showed that the father failed to make child support payments for three years. He hardly ever saw his child; he did not know the child's birthday. The grandparents testified that, for years, the father made no inquiries about the child. On the other hand, the father testified that he was blocked from seeing the child by the grandparents and that he had made some cash payments to the mother for child support. Our Supreme Court, noting that "the factfinding and weighing of evidence is to be done in the trial *536 court under the clear and convincing evidence test," held that a rational fact-finder could have found that the father abandoned his child. Id. at 513, 350 S.E.2d 444.
Although we do not weigh the evidence, we must ask if there is evidence to support the trial court's ruling. The record here shows that J.T. failed to contact his daughter for a two-year period; that after some initial assistance to the mother, he failed to contribute to L.S.'s support; that he made no formal attempt to gain custody of his daughter, even after knowing her mother had given birth while under the influence of cocaine and that she was homeless; and that he failed to legitimate his status as L.S.'s father. We hold that the record reflects sufficient evidence for a rational trier of fact to find by clear and convincing evidence that J.T. abandoned L.S. for purposes of OCGA § 15-11-81(b)(3). Given that the current foster parents wish to adopt L.S. and her brother, it was in the best interest of L.S. that J.T.'s parental rights be terminated, and the trial court acted properly in terminating those rights.
2. With respect to the trial court's findings that J.T. lost his parental rights because he did not legitimate his status as father of L.S. and had foregone his opportunity interest to father the child, we find that J.T.'s failure to legitimate L.S. was probative to the determination of whether J.T. had abandoned his daughter. However, the record indicates that J.T. was not notified of the termination hearing by registered or certified mail, return receipt requested, as required by then applicable OCGA § 15-11-83(e), and so we cannot uphold a termination of J.T.'s parental rights because he failed to file a legitimation petition. See OCGA § 15-11-83(h). But failure to notify J.T. in compliance with OCGA § 15-11-83(e) did not affect the jurisdiction of the court to consider a termination proceeding brought under OCGA § 15-11-81. See In the Interest of J.K., 239 Ga.App. 142, 146(2), 520 S.E.2d 19 (1999). Here, the court made a ruling under OCGA § 15-11-81 after J.T. was afforded a hearing at which he was present and represented by counsel. The court's termination of J.T.'s parental rights remains valid.
Judgment affirmed.
SMITH, P.J., and MILLER, J., concur.