A08A0351. IN THE INTEREST OF L. L. J., a child.
(657 SE2d 636)

BLACKBURN, Presiding Judge.

Following the termination of his parental rights, L. L. J.'s father appeals, challenging the sufficiency of the evidence. Because the evidence supported the juvenile court's judgment, we affirm.

> On appeal [in a termination case], we review the evidence in a light most favorable to the juvenile court's judgment and determine only whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. We defer to the juvenile court's factfinding and thus neither weigh the evidence nor evaluate witness credibility.

(Citation and punctuation omitted.) *In the Interest of K. J. M.*[1]

So viewed, the record shows that L. L. J. was born in December 2002 and was first taken into custody by the Wayne County Department of Family and Children Services (DFCS) in July 2003, when her mother was incarcerated for a probation violation due to a failed drug test. (The father was also incarcerated at that time.) DFCS placed L. L. J. with her maternal grandmother until May 2004, when DFCS resumed custody based on an allegation that the grandmother's boyfriend abused L. L. J.'s sibling. A reunification plan was established for L. L. J.'s parents, requiring them to establish and maintain stable housing and employment, undertake visitation, and complete family and substance abuse counseling. After DFCS regained custody, the father, who had been released from prison, legitimated L. L. J. and participated in visitation with L. L. J. In 2005, the parents consented to extending DFCS's custody to May 2006. In mid-2005, the father was arrested and incarcerated for a probation violation based on charges of possession with intent to distribute cocaine, habitual violator of driving without a license, fleeing an officer, obstruction, and a traffic violation. In December 2005, he pled guilty

---

[1] *In the Interest of K. J. M.,* 282 Ga. App. 72 (637 SE2d 810) (2006).

to those charges and was sentenced to serve ten years in prison followed by ten years of probation.

In March 2006, DFCS petitioned for termination of the father's parental rights based on the father's incarceration, failure to establish a meaningful bond with the child, and inability to provide stable housing or support for the child. After a hearing at which the father testified, the juvenile court granted the petition, giving rise to this appeal.

> Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.

(Punctuation omitted.) *In the Interest of R. N. H.*[2]

We address only the factors contested by the father: (i) the father's lack of proper parental care or control was the cause of deprivation, (ii) harm was likely to result, and (iii) it was in the best interest of the child to terminate the father's parental rights.

(i) *The father's lack of care or control is the cause of deprivation.*

> In determining whether [the child's] deprivation was caused by appellant's lack of proper parental care or control, the juvenile court was authorized to consider, among other things, whether appellant's felony convictions and imprisonments therefor had a demonstrable negative effect on the quality of the parent-child relationship. Although incarceration alone does not always compel termination of parental rights, it may support that ruling if sufficient aggravating circumstances are present. These aggravating circumstances may include a criminal history of repetitive incarcerations for the commission of criminal offenses or parole

---

[2] *In the Interest of R. N. H.*, 286 Ga. App. 737, 739-740 (650 SE2d 397) (2007).

violations. Further, when the child is not in the custody of the parent whose rights are at issue, the court must consider, among other things, whether the parent, without justifiable cause, failed significantly for a period of one year or longer to communicate or make a bona fide attempt to communicate with the child in a meaningful, supportive, parental manner and to provide for the care and support of the child.

(Punctuation and footnotes omitted.) *In the Interest of B. L. H.*[3]

Here, the father was incarcerated when DFCS initially became involved, and by the time of the deprivation hearing, the father had been incarcerated for most of the first three and one-half years of L. L. J.'s life, due to his probation violation involving a newly committed felony and his criminal history (including a prior conviction for sale and possession of narcotics). His first felony conviction was in 1988. Although the father participated in visitation while not incarcerated, a caseworker testified that he had not formed a meaningful bond with the child, because of the father's repeated incarceration and current ten-year prison sentence. Further, due to his incarceration, he had not provided suitable and stable housing for the child at any point in the child's life. Accordingly, in light of the evidence of the father's repeated incarceration and failure to bond with and support the child, the juvenile court was authorized to find that the father's lack of parental care or control caused the deprivation. See *In the Interest of B. L. H.*, supra.

(ii) *Continued deprivation was likely to cause harm.* At the termination hearing, a caseworker testified that she doubted the child knew her father, and it is undisputed that the father was eighteen months into a ten-year prison sentence at the time of the hearing. The caseworker further testified that the child had been in foster care continuously since she was 18 months old, and that the child needed to start bonding with someone permanently, and that a foster family had expressed interest in adopting L. L. J. Finally, it is undisputed that the father had multiple convictions for possessing and/or selling controlled substances. Accordingly, we find ample evidence in the record to support the juvenile court's finding with respect to likely harm to the child. See *In the Interest of D. R. C.*[4] (repeated commission of crimes and resulting incarceration); *In the Interest of M. C.*[5] (lack of parental bond and willingness of foster family to adopt).

---

[3] *In the Interest of B. L. H.*, 259 Ga. App. 482, 484 (1) (578 SE2d 143) (2003).

[4] *In the Interest of D. R. C.*, 198 Ga. App. 348, 351 (4) (401 SE2d 754) (1991).

[5] *In the Interest of M. C.*, 287 Ga. App. 766, 769-770 (1) (d) (653 SE2d 120) (2007).

(iii) *Termination was in the best interest of the child.*

A juvenile court has broad discretion when determining what is in the best interests of the children, and we will not reverse in the absence of manifest abuse of that discretion. The same evidence showing parental misconduct or inability may, and here does, establish that [L. L. J.'s] best interest required the termination of the [father's] parental rights.

(Punctuation and footnote omitted.) *In the Interest of B. S.*[6]

Here, the father's extensive criminal history, which began in 1988 and included a prior twenty-year prison sentence and a current ten-year sentence, authorized the juvenile court to infer that the hope for the father's imminent early release from prison, his establishment of a stable home and employment, and his future compliance with the law was not sufficient to justify maintaining L. L. J. in foster care limbo. See *In the Interest of M. A. S.;*[7] *In the Interest of B. D.*[8] ("in assessing whether termination is in the children's best interests, the juvenile court may consider their need for a permanent, stable home environment"). Given the evidence presented, the juvenile court was authorized to conclude that termination of the father's parental rights would serve L. L. J.'s best interest.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED FEBRUARY 11, 2008 ▮

*William B. Johnson,* for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Jerry W. Caldwell,* for appellee.

[6] *In the Interest of B. S.*, 283 Ga. App. 724, 728 (2) (642 SE2d 408) (2007).

[7] *In the Interest of M. A. S.*, 284 Ga. App. 102, 107 (1) (b) (643 SE2d 370) (2007).

[8] *In the Interest of B. D.*, 281 Ga. App. 725, 728 (2) (637 SE2d 123) (2006).