A08A0594. IN THE INTEREST OF K. E. A., a child.
(663 SE2d 822)

RUFFIN, Presiding Judge.

A juvenile court terminated the putative father's parental rights to K. E. A. On appeal, the putative father challenges the juvenile court's termination of his rights and contends that the court erred in failing to ascertain whether he was entitled to appointed counsel. The Department of Family and Children Services (DFCS), however, asserts that because the putative father never legitimated the child, he lacks standing to challenge the juvenile court's ruling. For reasons that follow, we disagree with DFCS regarding the putative father's standing to pursue this challenge. We nonetheless affirm the trial court's ruling.

We review an order terminating parental rights in a light favorable to the juvenile court's ruling to determine whether the finder of fact could have found by clear and convincing evidence that

the parent's rights to custody should be terminated.[1] "In so doing, we do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met."[2]

Viewed in this manner, the record shows that six-year-old K. E. A. was living with his biological mother and a stepfather in October 2004 when he was taken into DFCS custody based upon the facts that the family had moved four times in two months and the stepfather was using drugs.[3] K. E. A. has remained in foster care, as his mother and stepfather have been unable or unwilling to comply with their case plan, which required, among other things, that the two obtain stable employment and abstain from drug use.

At the time K. E. A. was taken into DFCS custody, the putative father was incarcerated. The putative father was released from prison in June 2006. Two months after being released from jail, the father contacted DFCS and was told that he needed to legitimate K. E. A., at which time a case plan would be developed. However, the putative father neither legitimated K. E. A. nor returned to DFCS in order to obtain a case plan.

On September 5, 2006, the putative father was served with summons and a petition, notifying him that DFCS was seeking to terminate his parental rights. In the petition, DFCS alleged that the putative father had abandoned his child, had maintained no parental bond for over a year, had not met with DFCS to develop a case plan, and had not financially supported the child for over a year. The summons informed the putative father that a hearing in the matter was scheduled for October 11, 2006. Significantly, the summons also contained a section labeled "READ CAREFULLY" that informed the father that he was required to attend the hearing and that he could be represented by counsel at the hearing. Specifically, the summons read:

> If you want a lawyer, you may choose and hire your own lawyer. If you want to hire a lawyer, please contact your lawyer immediately. If you want a lawyer but are not able to hire a lawyer without undue financial hardship, you may ask for a lawyer to be appointed to represent you. The Court will inquire into your financial circumstances and if the [C]ourt finds you to be financially unable to hire a lawyer, then a lawyer will be appointed to represent you. If you

---

[1] See *In the Interest of K. D.*, 285 Ga. App. 673, 674 (647 SE2d 360) (2007).

[2] (Punctuation omitted.) Id.

[3] K. E. A.'s half-sibling and two stepsiblings were also taken into DFCS custody.

want a lawyer appointed to represent you[,] you *must let the Court or officer of this Court handling this case know that you want a lawyer immediately*.[4]

Notwithstanding receipt of this notice, the putative father did not attend the October hearing. After taking evidence from the caseworker, mother, and stepfather, the juvenile court suspended the hearing until January 10, 2007. The putative father attended the January 2007 hearing, but was not represented by counsel. When asked whether he wanted to say anything, the father merely stated that he had acquired the paperwork necessary to legitimate K. E. A., but he had not completed the legitimation process.

Based upon the evidence presented, the juvenile court terminated the putative father's parental rights.[5] In its order, the court found that the putative father had "failed to maintain a meaningful and supportive bond with his child. He has not visited with his child due to his failure to legitimate the child and due to his incarceration." The putative father appeals this ruling.

1. As a threshold matter, we address DFCS' contention that the putative father lacks standing to object to the termination of his parental rights given his failure to legitimate K. E. A. DFCS cites OCGA § 15-11-96 (i), which provides, in pertinent part, that

[a] biological father who is not the legal father loses all rights to the child and the court shall enter an order terminating all such father's rights to the child and such father may not thereafter object to the termination of his rights to the child if within 30 days from his receipt of the notice provided for in subsection (e) of this Code section he . . . [d]oes not file a legitimation petition.

In other words, this Code section — by its express terms — applies only to those putative fathers who have received notice in accordance with OCGA § 15-11-96 (e), which provides that putative fathers must be "notified of the proceedings pursuant to this Code section." Thus, the father must first be informed that he is required to file a legitimation petition within 30 days.[6] Here, however, there is

---

[4] (Emphasis supplied.)

[5] The juvenile court also terminated the parental rights of the mother.

[6] See *In the Interest of C. M. S.*, 218 Ga. App. 487 (1) (462 SE2d 398) (1995) (abbreviated termination proceedings unavailable where notice provision not followed); compare *In the Interest of L. S. T.*, 286 Ga. App. 638, 639 (2) (649 SE2d 841) (2007) (father lacked standing where termination petition informed him that he would lose parental rights if he failed to file a petition to legitimate within 30 days and he did not do so).

no evidence that the father was so informed.[7] Accordingly, we cannot summarily dismiss this case based upon the putative father's failure to timely file a legitimation petition.[8]

2. The putative father also challenges the sufficiency of the evidence supporting the juvenile court's termination of his parental rights.[9] Specifically, he contends that there was insufficient evidence that he was presently unfit or that the child's deprivation was likely to continue.[10] Here, however, the trial court essentially terminated the putative father's rights based upon his abandonment of K. E. A., and the evidence supports this finding.

"Under the two-step inquiry for terminating parental rights, a court must first determine whether there is clear and convincing evidence of parental misconduct or inability."[11] If such misconduct or inability exists, the court must then determine whether termination is in the best interest of the child.[12] The first prong of the test may be established by showing abandonment.[13] "To find an abandonment, there must be sufficient evidence of an actual desertion, accompanied by an intention to sever entirely, so far as possible to do so, the parental relation, throw off all obligations growing out of the same, and forego all parental duties and claims."[14]

The evidence shows that the putative father has no relationship with K. E. A. He was incarcerated for at least several years, during which he was unable to see the child. Upon the putative father's release from jail, he was informed that he needed to legitimate K. E. A. before DFCS could develop a case plan for him. Nevertheless, the putative father never contacted DFCS for this purpose, and he failed to legitimate the child. Although he apparently had procured the paperwork for legitimation in January 2007, the juvenile court was not required to overlook the putative father's past inac-

---

[7] Although there is evidence that the father was informed he must legitimate his child in order for DFCS to create a case plan, this is not evidence of notice of the *proceedings* required by OCGA § 15-11-96 (e).

[8] See *In the Interest of L. S.*, 244 Ga. App. 626, 628 (2) (536 SE2d 533) (2000).

[9] We note that the father's attorney has failed to comply with Court of Appeals Rule 25 (c) (1), which requires that the sequence of argument in a brief follow the enumerations of error and be numbered accordingly. Notwithstanding the fact that the father alleges three enumerations of error, the argument section is not numbered at all. This failure to adhere to our rules has hampered our review, making it difficult to determine precisely what error is supported by argument.

[10] See, e.g., OCGA § 15-11-94 (b) (4).

[11] (Punctuation omitted.) *In the Interest of C. B.*, 258 Ga. App. 143, 145 (1) (574 SE2d 339) (2002).

[12] See id. at 146.

[13] See *In the Interest of H. L. W.*, 249 Ga. App. 600 (1) (547 SE2d 799) (2001); OCGA § 15-11-94 (b) (3).

[14] (Punctuation omitted.) Id.

tion. Under these circumstances, we find that sufficient evidence supported the juvenile court's finding that the putative father abandoned K. E. A.[15] And given the length of time that K. E. A. has remained in DFCS' custody, the trial court was authorized to find that termination of the putative father's parental rights was in the child's best interest.[16]

3. In two enumerations of error, the putative father contends that the trial court erred in failing to ascertain whether he understood that he had a right to counsel and in failing to determine whether counsel should have been appointed. Although we agree that the trial court should have done more to ascertain that the putative father was knowingly proceeding without counsel,[17] we cannot agree that any failure of the trial court in this regard constituted reversible error.

Because termination of parental rights is a civil matter that does not involve a constitutional right to counsel, the putative father must establish harm as well as error to warrant reversal.[18] Here, the putative father has made no attempt whatsoever to establish that he was harmed by the absence of an attorney. Indeed, given the putative father's lack of effort prior to the termination hearing, we fail to see how counsel would have aided the father's case. It follows that this claim of error presents no basis for reversal.[19]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED JUNE 25, 2008.

■

*Fears, Lawrence & Turner, William H. Turner, Jr.*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Wilson H. Bush, Juliet K. Rowell*, for appellee.

---

[15] See *In the Interest of L. S.*, supra at 627-628 (1).

[16] See *In the Interest of L. L. J.*, 289 Ga. App. 567, 570 (657 SE2d 636) (2008).

[17] See *In the Interest of Z. K.*, 285 Ga. App. 150, 153 (645 SE2d 637) (2007) (trial court should have exercised its duty to ascertain, on the record, whether the father had exercised diligence in attempting to obtain a lawyer) (physical precedent only).

[18] See id.; *In the Interest of C. B.*, supra at 147-148 (3).

[19] See id.