691 S.E.2d 250 (2010)
In the Interest of J.S., a child.
No. A10A0186.
Court of Appeals of Georgia.
February 12, 2010.
*251 James Skinner, pro se.
Justin B. Grubbs, Griffin, for appellee.
BLACKBURN, Presiding Judge.
The biological father of J.S., acting pro se, appeals from a juvenile court's order denying his petition to legitimate the child and terminating his parental rights.[1] Specifically, the father argues (i) that there was insufficient evidence to deny his petition for legitimation, (ii) that he was denied the right to an attorney during the termination proceeding, (iii) that the juvenile court erred in initially awarding custody of the child to his maternal grandparents, (iv) that the juvenile court lacked subject matter jurisdiction, and (v) that the court lacked personal jurisdiction over him. For the reasons set forth below, we affirm.
On appeal of an order denying a petition to legitimate and terminating parental rights, the evidence must be viewed in the light most favorable to the juvenile court's ruling to determine if any rational trier of fact could have found, by clear and convincing evidence, that the petition to legitimate should have been denied and that the parental rights should have been terminated. This Court does not weigh the evidence or determine the credibility of witnesses, and we must defer to the juvenile court's findings of fact if supported by the evidence.
(Citation and punctuation omitted.) In the Interest of L.S.T.[2]
So viewed, the record shows that J.S. was born on November 21, 2004 to unwed parents, and appellant is the child's putative biological father. J.S. lived with his mother until May 2006, when his maternal grandparents (the petitioners in this matter) were awarded temporary custody of him after the Juvenile Court of Spalding County found that the child was deprived based on his mother's history of drug use and inability to care for him and his father's incarceration. In August 2006, the mother filed a petition for reunification, which the juvenile court denied based on the mother's failure to complete a substance abuse treatment program and her failure to complete her treatment for Hepatitis C. In May 2008, the initial temporary custody order expired, and the maternal grandparents filed a renewed petition for custody of J.S. On July 22, 2008, the juvenile court granted the grandparents' petition, finding that J.S. continued to be deprived based on his mother's failure to complete the reunification plan and his father's incarceration.
On January 6, 2009, J.S.'s maternal grandparents filed a petition to terminate the parental rights of his mother and biological father, claiming that both parents were currently incarcerated and that J.S. continued to be deprived. At the same time, the grandparents also filed a notice to the biological father, pursuant to OCGA § 15-11-96(h) and (i), informing the father that he was required to file a petition to legitimate the child in order to contest the petition to terminate his parental rights. Subsequently, on January 21, 2009, the father, acting pro se, filed a legitimation petition. A few months later, J.S.'s mother filed a consent to the father's petition.
On May 21, 2009, the parties appeared before the juvenile court for a hearing on the grandparents' petition to terminate parental rights and on the father's petition to legitimate. At the start of the hearing, the father informed the court that he wanted legal representation but could not afford it. Thereafter, the court heard testimony relating to the father's petition to legitimate but decided *252 that it would not hear testimony relating to the termination of the father's parental rights because it was concerned about the father's lack of legal representation. The juvenile court then proceeded to hear testimony relating to the termination of the mother's parental rights, and at the conclusion of the hearing, the court granted the grandparents' petition to terminate her parental rights.
On June 8, 2009 (nunc pro tunc to May 21, 2009), the juvenile court issued an order denying the father's petition to legitimate J.S. In that same order, the juvenile court further held that based on its denial of the father's legitimation petition, pursuant to OCGA § 15-11-96(i)(3), the father had no standing to contest the termination of his parental rights, and thus his request for court-appointed counsel was moot. Thereafter, the father filed an application for discretionary appeal with this Court, which we granted. This appeal followed.
1. The father contends that the juvenile court erred in denying his petition to legitimate J.S., arguing that there was insufficient evidence to support the denial. We disagree.
"In ruling on a legitimation petition presented by a putative biological father, the juvenile court must initially determine whether the father has abandoned his opportunity interest to develop a relationship with the child." (Punctuation omitted.) In the Interest of J.L.E.[3] "If the juvenile court concludes that the father has abandoned his opportunity interest, that finding is sufficient to end the court's inquiry and justifies the denial of the legitimation petition." In the Interest of L.S.T., supra, 286 Ga.App. at 639(1), 649 S.E.2d 841. See Smith v. Soligon.[4]
Here, although the father testified that he lived with J.S. and his mother for the first year after J.S. was born, he admitted that he had not spent any significant time with his son after that first year due to his incarceration for a theft by taking conviction. In fact, the father had been incarcerated several times prior to J.S.'s birth on various charges, was still incarcerated at the time of the legitimation/termination hearing, and was not scheduled to be released for another month afterward. Additionally, the father testified that he had not provided J.S. with any child support and had not provided J.S.'s mother with any financial support since his incarceration. He further testified that he had not sent any cards or written any letters to J.S. since he had been incarcerated. Thus, the evidence sufficiently supported the juvenile court's finding that the father had abandoned his opportunity interest in developing a relationship with J.S. See In the Interest of J.L.E., supra, 281 Ga.App. at 807, 637 S.E.2d 446 (appellant's lack of contact with child and incarceration supported finding that he had abandoned his opportunity interest to develop a relationship with his child); Turner v. Wright[5] (incarcerated father abandoned his opportunity interest to develop a relationship with his child); Alexander v. Guthrie[6] (lack of contact with child, combined with father's incarceration, supported finding that father had abandoned his opportunity interest). Accordingly, the juvenile court did not err in denying the father's legitimation petition.
2. The father contends that he was wrongfully denied the right to an attorney during the termination proceeding. We disagree.
In this matter, the juvenile court heard testimony relating to the father's petition to legitimate J.S., but the court specifically decided that it would not hear evidence relating to the termination of the father's parental rights based on the fact that the father did not have legal representation at the hearing. Despite his request, the father "was not entitled to have an attorney appointed to represent him at public expense in the legitimation proceedings." Alexander, supra, 216 Ga.App. at 461(1), 454 S.E.2d 805. *253 After the hearing, the juvenile court issued an order, denying the father's legitimation petition and further ruling that in light of its denial of that petition, the father did not have standing to contest the termination of his parental rights.
A biological father who is not the legal father loses all rights to the child and the court shall enter an order terminating all such father's rights to the child and such father may not thereafter object to the termination of his rights to the child if within 30 days from his receipt of the notice [of the termination proceeding] he. . . [f]iles a legitimation petition and the action is subsequently concluded without a court order declaring a finding that he is the legal father of the child.
OCGA § 15-11-96(i)(3). See In the Interest of C.G.[7] Thus, "[b]ecause [the father] failed to legitimate [J.S.], he lacked standing to challenge the termination of his parental rights." In the Interest of J.L.E., supra, 281 Ga.App. at 807, 637 S.E.2d 446. See In the Interest of C.G., supra, 289 Ga.App. at 855(3), 658 S.E.2d 448; In the Interest of L.S.T., supra, 286 Ga.App. at 639(2), 649 S.E.2d 841. Given his lack of standing, the father's contention that he was wrongfully denied the right to counsel during the hearing on the termination of parental rights is moot.
3. The father contends that the juvenile court erred in initially awarding custody of J.S. to his maternal grandparents based on a finding that the child was deprived. However, neither the father nor the mother appealed those orders. "Hence, the [father's] failure to appeal the deprivation orders precludes [him] from contesting the juvenile court's finding of deprivation." In the Interest of J.J.[8] See In the Interest of R.N.H.[9]
4. The father contends that the juvenile court lacked subject-matter jurisdiction. Specifically, he argues that the termination petition in this matter was filed in connection with an adoption proceeding and therefore only the superior court had jurisdiction. This contention is without merit.
Under OCGA § 15-11-28(a)(2)(C), except where a termination petition is filed in connection with an adoption proceeding, the juvenile court has exclusive original jurisdiction over actions involving termination of parental rights. See In the Interest of K.N.C.[10] Although during the hearing on this matter, the maternal grandfather testified that he and his wife intended to eventually adopt J.S., he further testified that they would be doing so pursuant to the laws of the State of Florida, which was where they resided. Thus, their termination petition was not filed in connection with a formal adoption proceeding. Accordingly, the father's contention that the juvenile court lacked subject matter jurisdiction over the termination petition was without merit.
5. The father further contends that the juvenile court lacked personal jurisdiction and that venue was improper, arguing that both he and J.S.'s mother resided in Fayette County, prior to their incarcerations, and did not reside in Spalding County. However, the record contains no indication that the father challenged venue or the juvenile court's jurisdiction at any time prior to doing so in his appellate brief. Accordingly, the father has "waived defenses of personal jurisdiction and venue by failing to raise them at the earliest opportunity." Rice v. Champion Bldgs.[11] See In the Interest of J. H.[12]
Judgment affirmed.
BARNES and BERNES, JJ., concur.
NOTES
[1] In a separate order issued on the same date as the order that the father now appeals, the juvenile court also terminated the parental rights of J.S.'s mother. She did not appeal that order and is not a party to this appeal.
[2] In the Interest of L.S.T., 286 Ga.App. 638, 649 S.E.2d 841 (2007).
[3] In the Interest of J.L.E., 281 Ga.App. 805, 806, 637 S.E.2d 446 (2006).
[4] Smith v. Soligon, 254 Ga.App. 172, 173(2), 561 S.E.2d 850 (2002).
[5] Turner v. Wright, 217 Ga.App. 368, 368-369(1), 457 S.E.2d 575 (1995).
[6] Alexander v. Guthrie, 216 Ga.App. 460, 461-462(1), 454 S.E.2d 805 (1995).
[7] In the Interest of C.G., 289 Ga.App. 844, 855(3), 658 S.E.2d 448 (2008).
[8] In the Interest of J.J., 299 Ga.App. 271, 276(2)(a), 682 S.E.2d 349 (2009).
[9] In the Interest of R.N.H., 286 Ga.App. 737, 740(1)(a), 650 S.E.2d 397 (2007).
[10] In the Interest of K.N.C., 264 Ga.App. 475, 479(1) n. 6, 590 S.E.2d 792 (2003).
[11] Rice v. Champion Bldgs., Inc., 288 Ga.App. 597, 601(2), 654 S.E.2d 390 (2007).
[12] In the Interest of J.H., 244 Ga.App. 788, 791(1), 536 S.E.2d 805 (2000).