**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0324. IN THE INTEREST OF G. Q. et al.

ANDREWS, Presiding Judge.

The putative biological father of G. Q. and Y. Q., minor children, appeals the order of the Juvenile Court of Coweta County terminating his parental rights. The appellant contends the juvenile court erred by terminating his parental rights because the court incorrectly found that the appellant had been personally served with the termination petition, terminated his rights "before the first witness was sworn" and made subsequent findings of fact and conclusions of law about the appellant during the termination hearing, and denied his motion to continue the termination hearing. Because the juvenile court correctly found that the appellant lacked standing to challenge the termination of his parental rights, we affirm.

Due to the nature of the appellant's claims, a chronological review of the history of this case is warranted. The Coweta County Department of Family and Children Services (DFCS) originally opened its case on G. Q., G. Q.'s mother and the appellant in 2010 because G. Q. tested positive for marijuana at birth. From June 2011 forward, DFCS was unable to contact the appellant or G. Q.'s mother despite multiple attempts. On January 11, 2012, the appellant, a participant in the Coweta County drug court, appeared for a regularly scheduled court session. Prior to the court appearance, the appellant tested positive for cocaine use and, as a result, faced incarceration. The appellant brought G. Q. with him to court, stating that the child's mother left the child with him and that, as a result, the appellant would be unable to report to jail until a few days later when a relative could care for G. Q. The appellant was taken into custody at the January 11, 2012 court appearance, and DFCS obtained an order on the same date to take G. Q. into immediate custody.

Two days later, on January 13, 2012, DFCS filed a deprivation petition as to G. Q. The summons for the deprivation petition was served upon the appellant on January 26, 2012. The summons and process provided, in part, that

*[i]f you want a lawyer, but are unable to hire a lawyer without undue financial hardship, you must immediately contact the Public Defender's*

2

*Office at (770) 254-2704 so that they may inquire into your financial circumstances and if you do qualify for an indigent lawyer, then one will be appointed to represent you. DO NOT WAIT UNTIL THE DAY OF COURT TO REQUEST AN ATTORNEY.*[1]

(Emphasis in original). In addition, the proof of service form for the summons and process stated that

> If you want a lawyer but are not able to hire a lawyer without undue financial hardship, you may ask a lawyer to be appointed to represent you. The Court would inquire into your financial circumstances and if the Court finds you to be financially unable to hire a lawyer, then a lawyer will be appointed to represent you. If you want a lawyer appointed to represent you, you must let the Court or the officer of this Court handling this case know that you want a lawyer immediately.

The petition alleged that G. Q. was deprived because the appellant tested positive for cocaine use, the mother was unemployed, and DFCS knew nothing about "her current drug use, living arrangements, income or ability to properly care for [G. Q.]." The juvenile court conducted a hearing on DFCS' deprivation petition on February 8, 2012 and entered an order adjudicating G. Q. deprived on February 20, 2012.

---

[1] Although the statute was not specifically cited in the summons and process, we find this language satisfies the notification requirements of OCGA § 15-11-39 (d).

Five months later, the mother gave birth to the couple's second child, Y. Q., on July 13, 2012. Because both the mother and Y. Q. tested positive for marijuana at the child's birth, DFCS obtained an order to take immediate custody of Y. Q. on July 14, 2012. DFCS then filed a deprivation petition related to Y. Q. on July 17, 2012, alleging that Y. Q. tested positive for marijuana at birth; that the mother had no prenatal care, tested positive for cocaine use during pregnancy, moved frequently, and had no transportation, financial support, or provisions for Y. Q.; and that the appellant was incarcerated for drug violations. The summons for the July 17, 2012 deprivation petition was served upon the appellant on July 30, 2012. The summons and process contained notices of the appellant's right to counsel identical to those provided him in connection with G. Q.'s deprivation petition. Following an August 8, 2012 hearing, the juvenile court adjudicated Y. Q. deprived in an order entered August 23, 2012.

As part of the July 11, 2012 and August 16, 2012 case plans for G. Q., DFCS notified the appellant that one of his reunification goals was to "legitimate his child [G. Q.]." The appellant executed the plans on or about October 18, 2012. Likewise, in its December 13, 2012 case plan for Y. Q., DFCS notified the appellant as early as September 12, 2012 that a goal for his reunification with Y. Q. was that he, as "the

4

putative father, must prove paternity and legitimate [Y. Q.] as his legal child." The appellant executed that portion of the plan on or about September 21, 2012. Additional case plan reports for G. Q. and Y. Q., both dated January 28, 2013, included identical requirements that the appellant must legitimate his minor children. The appellant executed each of these plans.

Thereafter, following continued inaction by the children's parents, DFCS filed a petition for termination of the appellant's parental rights on March 8, 2013, noting therein that the appellant could be "personally served with summons and process at the Coweta County Jail." Included in the petition is a statement that

> Pursuant to O.C.G.A. § 15-11-96 (h), any biological father of the above-named children is hereby notified that he will lose all rights to the children and will not be entitled to object to termination of his parental rights to the children unless, within thirty (30) days of his receipt of notice as provided for in O.C.G.A. § 15-11-96 (e), he files:
>
> (1) a petition to legitimate your child named herein, pursuant to O.C.G.A. § 19-7-22; and
>
> (2) notice of filing of the petition to legitimate with the JuvenileCourt of Coweta County, in which action is pending.

Said biological father is also notified that he will lose all rights to his children and the Court shall enter an order terminating all of his parental rights to his children and he may not thereafter object to the termination of his rights to the children if within thirty (30) days from his receipt of the notice provided for in O.C.G.A. § 15-11-96 (e) he:

(1) does not file a legitimation petition and give notice as required in O.C.G.A. § 15-11-96 (h);

(2) file a legitimation petition which is subsequently dismissed for failure to prosecute; or

(3) file a legitimation petition and the action is subsequently concluded without a Court order declaring a finding that he is the legal father of the child.

The summons and process was served upon the appellant on March 12, 2013.[2] The summons and process each contained language apprising the appellant of his right to counsel. Thereafter, the juvenile court conducted a pre-trial hearing on the termination of the appellant's parental rights on April 17, 2013. Although no transcript for that hearing is included in the record before this Court, the record

---

[2] Of note, a copy of the petition was also served upon the appellant's current counsel.

confirms that the appellant appeared for the hearing and requested counsel, which the trial court provided in an order filed April 29, 2013.

The appellant, through his newly appointed counsel, filed a petition to legitimate G. Q. and Y. Q. on May 3, 2013.[3] Following a May 20, 2013 hearing, during which the juvenile court determined that the appellant lacked standing to challenge the termination of his parental rights, the court entered an order terminating both the appellant's and the mother's parental rights on May 30, 2013. Of note, the juvenile court found that neither the appellant nor the children's mother had any contact with G. Q. or Y. Q. since Y. Q.'s birth.

This Court reviews "an order terminating parental rights in a light favorable to the juvenile court's ruling to determine whether the finder of fact could have found by clear and convincing evidence that the parent's rights to custody should be terminated." *In the Interest of K. E. A.*, 292 Ga. App. 239, 239-240 (663 SE2d 822) (2008). See also *In the Interest of D. W.*, 264 Ga. App. 833, 834 (592 SE2d 679) (2003). "In so doing, we do not weigh the evidence or determine the credibility of

_____

[3] The record does not include a ruling on the appellant's legitimation petition. However, the outcome of the appellant's petition is irrelevant to our review.

witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met."[4] Id. at 240.

1. In his first enumeration of error, the appellant contends that the juvenile court erred when it terminated his parental rights because it: (1) failed to establish when the appellant was personally served with the termination petition; (2) admitted evidence containing hearsay; and (3) strictly enforced the time requirements of OCGA § 15-11-96 (h) and (i) in violation of his right to counsel. These arguments are not persuasive.

a. Service of the Petition for Termination of Parental Rights.

The appellant first asserts that the juvenile court failed to establish that he was personally served with the termination petition on March 12, 2013, which implicated the 30-day time requirements of OCGA § 15-11-96 (h) and (i) in which to file a petition to legitimate G. Q. and Y. Q. This argument is without merit.

As we have noted, DFCS filed a petition to terminate the appellant's parental rights on March 8, 2013. The summons and process, also dated March 8, 2013, was served upon the appellant on March 12, 2013. Thereafter, the juvenile court

---

[4] The appellant has not enumerated as error that the evidence was insufficient to support the juvenile court's termination of the appellant's parental rights.

conducted a pre-trial hearing on the termination of the appellant's parental rights on April 17, 2013. The record confirms that the appellant appeared for the hearing and requested counsel, which the trial court provided in an order filed April 29, 2013. The appellant, through his newly appointed counsel, filed a petition to legitimate G. Q. and Y. Q. on May 3, 2013.

Upon the filing of a petition to terminate parental rights, if there is a biological father who is not the legal father of the child and his identity is known to the petitioner, he is entitled to notice of the proceedings. OCGA § 15-11-96 (e) (1). In such circumstances, notice may be given by registered or certified mail or statutory overnight delivery; "[by p]ersonal service, which notice shall be deemed received when personal service is perfected;" or by publication. OCGA § 15-11-96 (f) (1), (f) (2). When notice is given as required by OCGA § 15-11-96 (e) (1),

> it shall advise such biological father who is not the legal father that he loses all rights to the child and will not be entitled to object to the termination of his rights to the child unless, within 30 days of receipt of such notice, he files:
>
> (1) A petition to legitimate the child. . .; and
>
> (2) Notice of the filing of the petition to legitimate or acknowledgment of legitimation. . . .

9

OCGA § 15-11-96 (h). If no legitimation petition and notice pursuant to OCGA § 15-11-96 (h) are filed within 30 days of the summons, the juvenile court "*shall* enter an order terminating all such father's rights to the child and such father may not thereafter object to the termination of his rights to the child." OCGA § 15-11-96 (i) (emphasis added). See also *In the Interest of D. W.*, 264 Ga. App. 833, 835 (1) (592 SE2d 679) (2003) ("The word 'shall' as used in such Code section cannot be construed [other than mandatory]. In its ordinary signification, 'shall' is a word of command, and the context ought to be very strongly persuasive before that word is softened into a mere permission.") (punctuation omitted).

"When a defendant in a lawsuit challenges the sufficiency of service, he bears the burden of showing improper service." *Earley v. Dyson*, 220 Ga. App. 586 (469 SE2d 841) (1996). See also *Cornelius v. Wood*, 223 Ga. App. 339, 341 (1) (477 SE2d 595) (1996).[5] A return may be challenged by proof that it is untrue, but a return "is of itself . . . evidence of a high order, and can only be set aside upon evidence which is not only clear and convincing, but the strongest of which the nature of the case will

_____

[5] Although the Civil Practice Act has not been adopted by, and is not binding on, the juvenile courts, see *In the Interest of A. J. M.*, 277 Ga. App. 646, 647 (1) (627 SE2d 399) (2006), OCGA § 15-11-96 (c) requires service "in the manner provided in Code Section 9-11-4." Cases analyzing service of process under OCGA § 9-11-4 are therefore instructive.

admit." *Lester v. Crooms, Inc.*, 157 Ga. App. 377, 379 (277 SE2d 751) (1981). See also *Cornelius*, supra, 233 Ga. App. at 341 (1)*; Earley*, supra, 220 Ga. App. at 586; *Hickey v. Merrit*, 128 Ga. App. 764, 766 (197 SE2d 833) (1973). Accordingly, "[i]n the absence of contradictory evidence, [a] trial court [is] warranted in accepting the certificate of service as proof of personal service." *Lester*, 157 Ga. App. at 380.

As a threshold matter, the record does not reveal any challenge to service of the March 8, 2013 summons and process at the April 17, 2013 pre-trial hearing or in the May 16, 2013 motion to continue the May 20, 2013 termination hearing. Indeed, even now, the appellant does not appear to contend that service of the summons and process was improper or, most tellingly, that the appellant did not receive notice as evidenced by the proof of service; rather, the appellant simply claims that the return included "the indecipherable signature of an unknown individual."

Pretermitting the question of whether the appellant properly raised this argument, the record confirms the findings by the juvenile court on the issue of service. The evidence of record demonstrates that the appellant received service of the termination petition on March 12, 2013. The record further confirms that the appellant received notice of the proceedings and that his parental rights would be terminated in the absence of a legitimation petition. Compare *In the Interest of K. E.*

11

*A.*, supra, 292 Ga. App. at 241 (1). Finally, the juvenile court determined that the appellant "was personally served on March 12, 2013 with the Petition and Summons" and that the petition and summons "recite the statutory legitimation notice contained in O.C.G.A. [§] 15-11-96 (h)." The appellant provided the juvenile court with no proffer of "the strongest [evidence] of which the nature of the case will admit" that might demonstrate service of the termination petition was improper. See generally *Franchell v. Clark*, 241 Ga. App. 128, 130 (1) (524 SE2d 512) (1999) ("Although [the appellant] claim[s] that [he was] prevented from presenting live testimony at the [termination] hearing, [he has] failed to make a proffer of evidence and to explain how such evidence would have assisted in resolving the controversy about the perfection of service."). The appellant has the burden to show error affirmatively in the record. See, e.g., *In the Interest of B. B. S.*, 253 Ga. App. 119, 120 (3) (558 SE2d 447) (2001). Having shown none, the appellant is not entitled to reversal on the question of service. To the contrary, for the reasons stated above, we find that the juvenile court did not err in finding that the appellant was personally served with the termination petition on March 12, 2013.

    b. "Strict Application" of OCGA § 15-11-96 (h) - (i) Time Requirements.

Because the issue of service controls the remainder of our analysis, we turn next to the appellant's contention that the juvenile court's "strict application" of the 30-day time requirements of OCGA § 15-11-96 (h) and (i) violated his right of counsel.[6] The appellant's argument is unavailing.

In view of the service of the termination petition upon him on March 12, 2013, the appellant was required to file a petition to legitimate the minor children not later than April 11, 2013 to preserve his interest in the children. See OCGA § 15-11-96 (i) (1). This, the appellant failed to do.[7] Because the appellant failed to legitimate G. Q.

---

[6] We take particular issue with the appellant's claim that the juvenile court did not inform him of his right to an attorney. On at least four occasions, in six separate documents, the appellant was notified of his right to counsel. That the appellant did not request counsel until April 17, 2013, after receiving initial notice of his right to counsel on or about January 26, 2012, is attributable solely to the appellant's inaction and provides no basis for relief. See *In the Interest of A. M. R.*, 230 Ga. App. 133, 137 (2) (495 SE2d 615) (1998) ("A request is required before an appointment is made."). Moreover, "[b]ecause termination of parental rights is a civil matter that does not involve a constitutional right to counsel, the putative father must establish harm as well as error to warrant reversal." *In the Interest of K. E. A.*, supra, 292 Ga. App. at 243. See also *In the Interest of A. M. R.*, supra, 230 Ga. App. at 136 (2). In this case, the appellant has not demonstrated that he was harmed by the absence of counsel. "Indeed, given the putative father's lack of effort prior to the termination hearing, we fail to see how counsel would have aided the father's case." Id.

[7] The requirement to legitimate his children should have come as no surprise to the appellant. We note that the appellant knew or should have known as early as July 11, 2012 that a petition for legitimation was a requirement to regain custody of his children. The appellant was again notified of this requirement on or about August

13

and Y. Q., "he lacked standing to challenge the termination of his parental rights." *In the Interest of J. S.*, 302 Ga. App. 342, 345 (2) (691 SE2d 250) (2010). See also *In the Interest of T. B. R.*, 304 Ga. App. 773, 786 (4) (697 SE2d 878) (2010); *In the Interest of C. G.*, 289 Ga. App. 844, 855 (3) (658 SE2d 448) (2008); *In the Interest of L. S. T.*, 286 Ga. App. 638, 639 (2) (649 SE2d 841) (2007); *In the Interest of J. L. E.*, 281 Ga. App. 805, 807 (637 SE2d 446) (2006); *In the Interest of D. W.*, supra, 264 Ga. App. at 834. "In the absence of standing to object to the termination of parental rights for an untimely filed legitimation petition, entry of an order terminating parental rights [is] mandatory." *In the Interest of D. W.,* supra, 264 Ga. App. at 835 (1). See also OCGA § 15-11-96 (i); *In the Interest of S. M. R.*, 286 Ga. App. 139, 141 (648 SE2d 697) (2007). Given his lack of standing, the appellant's contention that he was denied the right to counsel during the termination hearing is moot. *In the Interest of J. S.*, supra, 302 Ga. App. at 345 (2). See also *In the Interest of D. W.*, supra, 264 Ga. App. at 835 (2); *In the Interest of A. M. R.*, supra, 230 Ga. App. at 137 ("A request is required before an appointment is made.").

16, 2012, September 21, 2012, October 18, 2012 and January 28, 2013. Finally, the termination petition warned the appellant that he would lose all rights to the children if he did not timely file a petition for legitimation. Nonetheless, the appellant did not exercise this right until May 3, 2013, at least three weeks after the time for filing a petition for legitimation expired.

c. Admission of Exhibit A (2).

Next, the appellant claims, without citation to authority, that the juvenile court erred in admitting Exhibit A (2) into evidence because it contained hearsay and violated the appellant's right to confrontation. In fact, the proof of service form had already been filed of record with the juvenile court on March 13, 2013. Having failed to support this claim with any meaningful argument or with "statutory or legal authority for this contention," the claim is deemed abandoned pursuant to Court of Appeals Rule 25 (c) (2). See generally *Williams v. State*, 296 Ga. App. 707, 708 (2) (675 SE2d 596) (2009).

2. The appellant asserts the juvenile court erred because it terminated his parental rights "before the first witness was sworn" and thereafter made findings of fact and conclusions of law about the appellant during the termination hearing.[8] In fact, the juvenile court determined that the appellant failed to satisfy the requirements of OCGA § 15-11-96 (h) because he did not file a timely petition for legitimation of

---

[8] The appellant has not included within his argument any reference to an allegedly erroneous finding of fact or conclusion of law by the juvenile court. It therefore appears that the appellant's argument, which is itself unsupported by a single citation to authority, is that the juvenile court erred by entering findings of fact and conclusions of law *at all*. This assertion is also deemed abandoned pursuant to Court of Appeals Rule 25 (c) (2). See generally *Williams*, supra, 296 Ga. App. at 708 (2).

15

the minor children. Accordingly, the juvenile court found that the appellant had no standing to challenge the termination proceeding. See OCGA § 15-11-96 (i); *In the Interest of T. B. R.*, supra, 304 Ga. App. at 786 (4); *In the Interest of J. S.*, supra, 302 Ga. App. at 345 (2); *In the Interest of D. W.*, supra, 264 Ga. App. at 834. In view of these findings and our discussion in Division 1, we again conclude that the juvenile court's decision was not error.

3. Finally, the appellant argues that the juvenile court erred when it denied his motion to continue the May 20, 2013 termination hearing. We find that the appellant's argument on this point is moot by virtue of our discussion in Divisions 1 and 2. See *In the Interest of T. B. R.*, supra, 304 Ga. App. at 786 (4).

*Judgment affirmed. McFadden and Ray, JJ., concur.*